UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
PIKEVILLE

| | |
|---|---|
| STEPHANIE WATSON, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> COMMONWEALTH OF KENTUCKY, ) <br> et al., ) <br> ) <br> Defendants. ) | Civil No. 15-21-ART <br><br> **MEMORANDUM OPINION AND ORDER** |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

Stephanie Watson unfortunately has an illness that affects many: addiction to drugs. And, like many courts, the Kentucky courts have struggled with how to treat this illness. Watson wants the Kentucky courts to allow her treatment to include Suboxone or a similar drug while she awaits prosecution. The Kentucky court, however, requests a doctor's note before considering such treatment to make sure her use of a controlled substance is medically necessary. Rather than get a doctor's note, Watson has come to federal court. Federal courts, however, are neither big brother to the state courts, nor are they better equipped to deal with this illness. And, more importantly, the Supreme Court has mandated that federal courts not interfere with state criminal proceedings. As such, the Commonwealth's motion to dismiss must be granted.

# BACKGROUND

Watson, a registered nurse, became addicted to opiates in 2012. R. 1 ¶ 8 (complaint). Three years later, Kentucky charged Watson with taking drug remnants from a medical center's bio hazard disposal box. *Id.*; R. 4-4 at 2 (state court record). At the time of Watson's arrest, Kentucky allowed drug court judges to authorize the use of medically assisted treatment ("MAT") drugs like Methadone or Suboxone "on a temporary basis" for a 6-month period. R. 4-8 at 19 (KY ST ADMIN P XIII Sec. 23 (2010)).[1] As a condition of Watson's monitored conditional release ("MCR"), the state court ordered Watson to refrain from consuming illegal drugs and to provide the court with a note from her treating physician "[p]rior to taking any controlled/narcotic medication." R. 4-2 at 2.

The state court conducted a preliminary hearing in Watson's case on March 2, 2015. R. 4-1 at 7; R. 4-5, CD D-1 (audio recording of preliminary hearing). At the hearing, Watson requested the state court take her off the MCR terms or remove the "blanket prohibition on her taking Suboxone, Methadone or any other drugs that she needs" to treat her addiction. R. 4-5, CD D-1, at 10:51–11:19. The state attorney clarified that there was not a blanket prohibition on MAT drug use, but that "it's generally the Court's practice to allow [MAT drug use] if the doctor will show [] medical need." *Id.* at 11:22–11:44. The court agreed and instructed Watson to produce "medical proof and recommendations from a treating physician" that she needs to use

---

[1] On March 24, 2015, the Kentucky Supreme Court amended the Rules for drug courts. R. 4-9 at 2. The amendment removed the 6-month limitation altogether. *See id.* at 18. Now drug court judges may authorize drug court participants to use MAT drugs according to a patient's need without temporal limitations. R. 4-11 at 28 (KY ST ADMIN P XIII Sec. 23 (amended March 24, 2015)).

MAT drugs as part of her treatment. *Id.* at 11:45–11:59. Watson also asked the state court to declare Kentucky's policy with regards to MAT drugs in violation of the Americans with Disabilities Act ("ADA"), the Rehabilitation Act. *Id.* at 12:00–12:36. The state court denied Watson's request. *Id.* at 12:37–12:45. At the hearing, Watson did not raise any other claims, constitutional or otherwise. *See generally id.*

On March 9, 2015, Watson filed a complaint in this Court challenging the medication condition. R. 1. She claims that conditioning her use of narcotics on a court's review of a doctor's note violates the ADA, the Rehabilitation Act, the Equal Protection and Due Process Clauses of the United States Constitution, and § 2 of the Kentucky Constitution. R. 1 ¶¶ 24, 29. Watson asks the Court to enjoin the Kentucky Administrative Office of the Courts from enforcing the medication condition. *Id.* ¶ 25.

## DISCUSSION

Generally, parallel state court proceedings do not prevent a federal court from exercising its jurisdiction to hear and decide a case. *Sprint Commc'ns, Inc. v. Jacobs*, 134 S. Ct. 584, 588 (2013). In certain "exceptional" situations, though, a federal court must abstain from interfering with pending state court actions. *Id.*; *see also New Orleans Pub. Serv., Inc. v. Council of City of New Orleans*, 491 U.S. 350, 368 (1989). Ordering a state court to lift a condition of release in a criminal proceeding is precisely the sort of "exceptional situation" from which federal courts should abstain. *See Younger v. Harris*, 401 U.S. 37 (1971). *Younger* bars federal courts from interfering in a state court proceeding that (1) is ongoing, (2) involves an important state interest, and (3) provides adequate opportunity to raise a constitutional challenge. *Fieger v. Cox*,

3

524 F.3d 770, 775 (6th Cir. 2008). When the state court proceeding satisfies all three *Younger* requirements, the federal court should dismiss the case—and courts are free to do so even before addressing jurisdiction or proceeding to the merits. *See Tenet v. Doe*, 544 U.S. 1, 6 n.4 (2005) (citing *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 585 (1999)).

Here, *Younger* mandates dismissal. First, Watson does not dispute that the state court proceeding is ongoing. *See Fieger*, 524 F.3d at 775. Instead, she only claims—without support—that *Younger* does not apply because enjoining the state court's medication condition does not actually "restrain the criminal prosecution." R. 13 at 11. The Sixth Circuit has held that *Younger* bars "even minimal interference with . . . a state proceeding." *J. P. v. DeSanti*, 653 F.2d 1080, 1084 (6th Cir. 1981). And when the state proceeding is criminal in nature, the policy against federal interference is "particularly" strong. *Younger*, 401 U.S. at 43. That policy applies "in full force" as soon as the "state criminal proceedings [have] begun." *Hicks v. Miranda*, 422 U.S. 332, 349 (1975) (holding that *Younger* applied as soon as charges were brought in state court, even though the federal case was already pending). In short, "*Younger* established a near-absolute restraint rule when there are pending state criminal proceedings"—even when the interference would not actually halt the prosecution altogether. *Parker v. Turner*, 626 F.2d 1, 8 (6th Cir. 1980). In this case, the criminal proceedings have begun, and thus, are ongoing for the purposes of *Younger*. R. 4-5, CD D-1.

4

Though Watson does not cite *Gerstein v. Pugh*, 420 U.S. 103 (1975), it could seem at a glance to support Watson's theory. *Gerstein* involved a challenge to a Florida policy that allowed criminal defendants to be held in jail "for a month or more" without an initial probable cause hearing. *Id.* at 106. The plaintiffs sued in federal court, claiming they had a constitutional right to an immediate hearing before they were detained. *Id.* at 107. The District Court granted the plaintiffs relief and ordered the state to hold immediate probable cause hearings for all defendants. *Id.* at 107–08. Although *Younger* generally prohibits federal intervention in a state criminal proceeding, the Supreme Court noted in a footnote that federal intervention was appropriate. *Id.* at 108 n.9. The Supreme Court reasoned that the plaintiffs' claims could not be raised in the pending state proceedings, so the state court did not provide an adequate forum for the constitutional claims. *Id.* Moreover, the criminal defendants were only challenging the legality of detention without a probable cause hearing, so the federal court was not interfering with the state court prosecution on the merits. *Id.* The Sixth Circuit has since interpreted *Gerstein* to require district courts to determine "whether the issue raised is collateral to the principal state proceeding and whether state court relief is available." *Parker*, 626 F.2d at 8.

*Gerstein* does not apply here because Watson already received a hearing and can raise further challenges in state court. *See* Ky. R. Crim. P. ("RCr.") 4.40(1) (permitting a criminal defendant to challenge conditions of supervised release any time prior to trial); *see also Habich v. City of Dearborn*, 331 F.3d 524, 531 (6th Cir. 2003) ("[T]he critical question[] [under *Gerstein*] include[s] whether the issue raised is

5

collateral to the principal state proceeding, or, framed a different way, whether the federal plaintiffs have an opportunity to raise their claim in state proceedings." (internal citations and quotations omitted)); *Morano v. Dillon*, 746 F.2d 942, 945 (2d Cir. 1984) (holding that *Younger* bars a federal court from interfering in a state court's decision to deny a criminal defendant a preliminary hearing because, unlike the defendant in *Gerstein*, the defendant was able to raise his constitutional claims in the criminal proceedings at hand). Any other reading of *Gerstein* would lead to an absurd result—that federal courts can interfere with state bond proceedings and conditions of bond at any time, even where the state offers an adequate forum. Such a rule would unduly impede the state's ability to regulate and monitor the activities of pre-trial criminal defendants effectively and efficiently. *See Wallace v. Kern*, 520 F.2d 400, 405 (2d. Cir. 1975) ("It would indeed be anomalous to hold that *Younger* abstention is applicable in certain civil actions in which the state has some concern but not to a bail application proceeding in which the [state has] a most profound interest."); *see also Middlesex Cnty. Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 437 (1982) ("It would trivialize the principles of comity and federalism if federal courts failed to take into account that an adequate state forum for all relevant issues has clearly been demonstrated to be available prior to any proceedings on the merits in federal court."). Federal court intervention here would create a completely unworkable system where state court defendants could run to federal court every time they wanted to argue that bond conditions violated a constitutional or statutory right—claims they are perfectly capable of raising and having adjudicated in state court. *See O'Shea v. Littleton*, 414

U.S. 488, 500 (1974) ("A federal court should not intervene to establish the basis for future intervention that would be so intrusive and unworkable.").

Second, Watson seeks an injunction that implicates important state interests. *See Fieger*, 524 F.3d at 775. Watson argues that no "important state interest could exist in interfering with an individual's right to medical treatment." R. 13 at 12. But a state's interest "in the enforcement of its criminal laws" is of "great import." *Juidice v. Vail*, 430 U.S. 327, 335 (1977). In particular, states have an important interest in "regulating the prescription and distribution of controlled substances by licensed physicians." *Watts v. Burkhart*, 854 F.2d 839, 847 (6th Cir. 1988). In accordance with this interest, the Commonwealth prohibits unauthorized use of controlled substances. *See* Ky. Rev. Stat. §§ 218A.1404(2) ("No person shall possess any controlled substance except as authorized by law."); 218A.140 (prohibiting the improper acquisition of prescriptions for controlled substances). And the condition of supervised release furthers this interest by preventing criminal defendants from using controlled substances without a valid prescription.

Moreover, the Commonwealth has an interest in regulating pretrial release conditions to protect public safety. *See United States v. Salerno*, 481 U.S. 739, 750 (1987) (stating that the government has a compelling interest in preventing crime and that conditions of release help assure the safety of the community and its citizens); *Wallace*, 520 F.2d at 405 (noting the state's "profound interest" in a bail application proceeding). The Commonwealth demonstrated this interest recently when the state

7

legislature revised the standards that Kentucky courts apply when granting a defendant pretrial release. *See* Ky. Rev. Stat. § 431.066 (effective July 12, 2012).

Finally, the state proceeding provided Watson with "an adequate opportunity . . . to raise a constitutional challenge." *See Fieger*, 524 F.3d at 775. This third *Younger* prong is satisfied unless Watson demonstrates "that state procedural law barred presentation of [her] claims." *Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1, 14 (1987) (quoting *Moore v. Sims*, 442 U.S. 415, 432 (1979)). Watson has made no such showing. Instead, she offers only the conclusory allegation—again without citing any support—that she "does not have an adequate opportunity to raise any constitutional challenges within the context of the criminal prosecution." R. 13 at 12. But far from barring presentation of her claims, the state court already gave Watson a preliminary hearing, at which she had an opportunity to raise her claims. R. 4-5, CD D-1 (audio recording of preliminary hearing). During the hearing, Watson argued that the state court could, and should, strike down the "blanket prohibition" on MAT drug use as a violation of the ADA. R. 4-5, CD D-1, at 12:28–36. But Watson made no attempt to raise any of her constitutional claims at the same hearing, *see* R. 4-5, CD D-1, and Watson cites no law barring her from raising her constitutional challenges at the hearing. *See Moore*, 442 U.S. at 430 ("[T]he only pertinent inquiry is whether the state proceedings afford an *adequate opportunity* to raise the constitutional claims, and [the state] law appears to raise no procedural barriers." (emphasis added)). And that is not all—Watson may, "at any time before [her] trial," move "for a change of conditions of

8

release." RCr. 4.40(1). If the state court denies her motion, Watson may then appeal the denial to the Kentucky Court of Appeals. *See* RCr. 4.43(1).

Watson has not made use of those opportunities to raise her constitutional claims in state court. Nor has she explained why the available remedies are inadequate. State courts are fully capable of adjudicating federal constitutional claims. *See Moore*, 442 U.S. at 430 ("The price exacted in terms of comity would only be outweighed if state courts were not competent to adjudicate federal constitutional claims—a postulate we have repeatedly and emphatically rejected."). So, "in the absence of unambiguous authority to the contrary," the Court must "assume that [the] state procedures will afford an adequate remedy." *Pennzoil Co.*, 481 U.S. at 15; *see also Kelm v. Hyatt*, 44 F.3d 415, 420 (6th Cir. 1995) (noting that "the plaintiff did not meet its burden to prove the inadequacy of the state courts" because the plaintiff never "attempt[ed] to secure relief in the state courts").

Though *Younger*'s bar is broad, it is not *quite* absolute. *Parker*, 626 F.2d at 8. In "extraordinary circumstances," federal courts "may decline to abstain" under *Younger*. *Tindall v. Wayne Cnty. Friend of the Court*, 269 F.3d 533, 538 (6th Cir. 2001). Examples of extraordinary circumstances include bad faith, harassment, and "flagrantly and patently unconstitutional" state rules. *Middlesex Cnty. Ethics Comm'n*, 457 U.S. at 437. But Watson, who bears the burden, has not alleged any extraordinary circumstances here. Because *Younger* applies to Watson's claims, the Court does not reach the defendants' remaining grounds for dismissal.

## CONCLUSION

The Court sympathizes with Watson's plight. Drug addiction has no easy cure. Yet, the debate over best practices is something best left to the doctors and state court judges—both of whom deal with drug addiction much more frequently than federal judges. Most importantly, the federal court remains an equal counterpart to the states, not a superior forum. And *Younger* reasonably mandates that the federal court stay out of this dispute when the state court offers the opportunity to present federal claims.

Accordingly, it is **ORDERED** that:

(1) The defendants' motion to dismiss, R. 4, is **GRANTED**.

(2) The parties' joint motion for an oral argument, R. 15, is **DENIED AS MOOT**.

This the 6th day of July, 2015.

Signed By:
*Amul R. Thapar*
United States District Judge